Curia, per

Evans, J.
By our Act of 1825, (p. 31,) all the male inhabitants of this State are declared liable to work on the roads, bridges and causeways. The tenth section enacts, “that from and after the passing of this Act, the following persons, and no others, shall be exempted from all liabilities to work on roads and bridges, viz. all ministers of the gospel, millers and ferrymen.” This is a most comprehensive enactment. With these few exceptions, the Act embraces all the adult male inhabitants of the State.
To shew, then, that a Post Master is not liable to work on .the public roads, his official exemption must be proved from something paramount to the Act, or that supercedes it in the particular instance. As, for example, that the State Act is opposed to the Federal Constitution, or to some constitutional law of Congress, a treaty, or the like, which constitute our supreme laws. But nothing of the kind is specifically suggested. The ground taken is, that the Post Master is exempt by virtue of his federal commission; that such is the necessary implication of the Federal and State constitutions under their proper construction, forming the conventional law of the confederated States, and binding on the whole Union. ' But such a proposition is too general and sweeping in its consequences to be readily admitted. It would exempt federal officers trom all personal service to the State by which *211 they are protected in person and property. These duties, between the citizen and the government, are not to be got rid of, but by pressing necessity, or by express enactment. They are inherent- both in the general and the State government, and vital to their justice, order and support. They should, therefore, be permanent in their character, general in their application, and reciprocal in their obligation. We would therefore require proof, or conclusive argument, before admitting such a proposition for official exemption.
In contemplating our duties to thé general and State governments, let us call to mind that the Federal and State Constitutions so constitute one context and series of a single governmental system, that we cannot expound the one without reference to both instruments. We have two Legislatures, each with its several and distinct subjects of legislation; so that neither can make a law binding, that is beyond its strict constitutional limitations, while each is supreme within its own proper sphere of powers, as granted to the one, or restricted to the other. I, therefore, conclude that, whenever Congress shall have enacted that certain federal officers shall be exempt from specific civil duties, (as some are now exempt from ordinary militia duty,) such exemption might supercede a general Act of the State, or constitute an exception to its provisions, and the two enactments would be, thus, well reconciled.
But the general principle of exemption, bottomed on the comprehensive theory that such officers are always employed officially, would, at once, exempt them from all personal services to the State of which they are citizens. They might refuse to attend court, to give evidence, to serve as jurors, to meet the tax collector at the time appointed to receive returns of taxable property, and yet, claim all the advantage and security of the State protection of person, character and property ; which protection is the equivalent for the very services which they would refuse to render. We cannot reconcile such incongruity.
*212 In the case of Ansley vs. Timmons, (3 M’C. R. 329,) the court decided that even aliens are liable to perform militia duty; that it is in return for personal protection, and therefore no infraction of international law. And, upon the same principle, I would say, in the language of the dissenting opinion in Harrington’s case, (2 M’C. R. 404; in which the first constructive exemption from road duty was allowed, and where the principles, of which a brief exposition is now made, were considered more at large ;) “If the President of the United States were to claims the privilege of a total exemption from any general civil duty required of the citizens of the State where he resided, I would reply to him, first throw off the protection of your person and life, your property and character, afforded by the State government, and then you may be exempt. This is the tax laid on the person, to be paid in labour. If you cannot do the labour, the law admits of any reasonable excuse, to be judged of by the proper authority; but, having offered none, you must pay the fine, which is, at once, the substitute for your labour and the price of your protection. Your office affords no privilege, and only binds you down more closely to obedience. You are still liable to be burthened according to the exigency of that local government which, in return for such services, holds an aegis oyer your person and property.”
In the recent case of Lieutenant Ingraham, decided last February, (Supra, p. 78,) this principle was adopted, and a naval officer, then on furlough, was held liable to serve as a juror. In my opinion, that adjudication, which was unanimous, decides the present question. But, as its final decision may be thought to militate against the opinion of the Court in Harrington’s case, (2 M’C. R. 400,) and in that of The State vs. Martindale, (1 Bailey R. 163,) great consideration is due to these adjudications.
In the case against Harrington, three Judges, against two, decided that the clerk of a court, in virtue of his office, was *213 exempt from workijig on the roads. In that of Martindale, two Judges, against one, in the late Court of Appeals, decided that a Judge of the Federal Court was exempt from patrol duty.
In those cases, writs of prohibition were ordered, upon the ground that both the clerk and the judge, by reason of their continued employment in their offices, were legally exempt, not merely excused, from the personal duties required of them under the general enactments of our State laws, which, in terms, admitted of no exception of men within certain'ages. Accordingly, in the decision of the case now before us, I felt that an apology was due for drawing a distinction between a post master and a clerk, or a judge. But I thought the possible distinction justified an effort to arrest the extension of such exclusive personal exemption from essential duties to the State ; and I, therefore, refused the writ.
It may be regretted that the counsel did not deem it necessary to discuss the case upon doctrinal and constitutional grounds, to enquire whether the two former adjudications might not be wisely reconsidered upon arguments ab inconvenient. The counsel merely referred to those cases as conclusive authority. The instance now before the court, affords a striking illustration of the evil apprehended, at the trial of Harrington’s case, of the growing nature of such personal privileges. By the last report of the Post Master General, there are, in the United States, more than thirteen thousand post offices, or an average of five hundred to each State. If,, then, Mr. Campbell be entitled to his prohibition, the five hundred post masters of this State, many, of whom receive only three or four mails per week, would become exempt,, ipso jacto, with the decision in his favour. And ' this principle of official exemption, being once settled in favour of a few judges and clerks, and five hundred post masters, must, of course, be followed out in a long train of official exempts. Jmw must be uniform in its operations ; and Judges cannot, *214 like Caligula, make a Consul of one favorite steed to be fed upon gilded oats, while they keep the rest of his fellows close in harness, upon straw. There'certainly are some offices, as that of President, 'or Governor, that, of themselves, imply a reasonable excuse; but the best standing excuse cannot amount to an official letter of exemption, so as to demand a writ of prohibition, as the right of entire classes, who can shew no legislative warrant for the privilege claimed. As I hold, for myself, that the highly controverted decisions, in Martindale's and Harrington’s cases, went upon mistaken principles, I have once more'turned attention to the distinction between matter of excuse and the privilege of exemption. It is the proper ground of our present adjudication. ‘ Ex gratia’ and ‘ex debito justifies? are.two things in law.
But, without assuming that the decision in the present case overturns those of Harrington and Martindale, the decision of the circuit judge, that the post master is not entitled to the writ of prohibition against the commissioners of roads, is unanimously affirmed.
Earle, J.
In Harrington’s case, the ground of exemption was, that by the Act of 1784-, clerks of the court were required to afford access to their offices at all times of the day, from 9 o’clock in the morning until 4 o’clock in the evening, Sundays excepted, and therefore the performance of this duty was incompatible with that of working on the roads; and, although the commissioners were authorized to ascertain and declare, when the same was not ascertained by law, or where doubts might arise concerning the same, what' inhabitants were liable to work on any road, yet the exemption claimed was one ascertained by law, and the jurisdiction of the commissioners did not extend to the case of the relator. But the road laws, up to that time, had provided no special exemptions, and had only declared that the roads should be kept in repair “ at the equal charge and labour of all the male inhabitants from the age of 16 to 50 years.”
*215 The Act of 1825, in exempting ministers of the gospel, inillers and ferrymen, declares that no others shall be exemp-ed from liability to work on roads and bridges. This enactment must be considered conclusive against the claim of exemption by any other class of.persons, whether on the ground of office, or otherwise; and. was probably adopted with reference to the various exemptions which might be claimed under the existing laws and judicial decisions. The duty of working on the roads is only a species of tax; a contribution which ought to be borne equally by all who live in the country, subject to its municipal regulations. And, without the Act of 1825, it would seem as reasonable and as just that one holding a public office should claim to be exempt from paying an assessment for building or repairing a bridge. A default which arises from performing some other public duty, must be left, as matter of excuse, for the commissioners.
Without reference to the grounds of former decisions, Í conclude, upon the construction of the Act of 1825, that the relator, Campbell, cannot be allowed the exemption which he claims, and that the prohibition was properly refused.
Evans, Butler and Gantt, JJ. concurred in this opinion.